UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Trinidad TERRAZAS–CARRASCO,
Defendant–Appellant.

No. 88–1429
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1988.

Thomas S. Morgan, Midland, Tex. (court-appointed), for defendant-appellant.

LeRoy Morgan Jahn, Michael R. Hardy, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jose Trinidad Terrazas–Carrasco ("defendant"), a Mexican national, was deported from the United States to Mexico on June 20, 1986. In connection with the deportation, he was warned that re-entry into the United States could subject him to felony punishment. On February 9, 1988, defendant was spotted by a border patrol agent in his parents' backyard in Presidio, Texas. Upon seeing the agent, defendant ran into his parents' trailer home. Shortly thereafter, immigration officers gained entry and defendant, after being confronted, acknowledged that he was within the United States illegally. After receiving his *Miranda* warnings, defendant signed a sworn written statement to the effect that no threats had been made against him and that his admissions were freely and voluntarily given. In addition to the present entry into the United States, the statement also admitted previous illegal entries. Defendant was born in Mexico and had no papers entitling him to be in the United States. Nor was there any indication that he had attempted to re-apply for admission into the United States.

On February 19, 1988, defendant was indicted by a federal grand jury for violating 8 U.S.C. § 1326, prohibiting re-entry into the United States following deportation. He was found guilty on April 5, 1988, and was sentenced to a six-month prison term and one-year supervised release. Defendant now appeals, claiming that the prosecutor's exercise of peremptory challenges in excluding Hispanic veniremen violated the equal protection component of the fifth amendment; that defendant's request-ed jury instruction concerning the voluntariness of his confession was improperly denied to his prejudice; that the trial court failed to instruct the jury on the absence of consent from the Attorney General to reapply for admission to the United States under 8 U.S.C. § 1326; and that this statute, as applied in this case, violates the Constitution for several reasons.

## I. *Peremptory Challenges.*

The use of peremptory challenges to exclude veniremen "solely on account" of race violates the equal protection component of the due process clause of the fifth amendment. *United States v. Leslie*, 813 F.2d 658 (5th Cir.1987) (incorporating the fourteenth amendment protection of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). Where, as in this case, the trial judge has entertained and ruled on a defendant's motion charging a *Batson* violation, we review only his "finding of discrimination *vel non*," *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir.1987) (citation omitted); *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988). In this regard, we apply a "clearly erroneous" or "great deference" standard of review. *Forbes*, 816 F.2d at 1010; *Lance*, 853 F.2d at 1181; *see also United States v. Williams*, 822 F.2d 512, 515 (5th Cir.1987).

Applying this deferential standard and the specific holdings of *Lance* to the instant case, we uphold the finding that no *Batson* violation occurred. The prosecutor gave credible reasons, upon questioning by the court, for each of his peremptory challenges. We "must accept the [inquiring] judge's credibility choice" with respect to the prosecutor's reasons. Valid reasons for exclusion may include "intuitive assumptions" upon confronting a venireman. *Lance*, 853 F.2d at 1181. In *Lance*, we upheld such factors as eye contact, demeanor, age, marital status, and length of residence in the community as valid grounds for peremptory challenge. In this case, the reasons articulated are of the

same variety.[1]

Finally, the fact that the prosecutor exercised only six out of his seven challenges to exclude members of defendant's race, although several others remained in the venire, substantially supports the finding of no discrimination. Similarly, in *Lance*, we noted that the government had used some but not all of its peremptory challenges to excuse minority veniremen. 853 F.2d at 1180. *See United States v. Williams*, 822 F.2d 512, 515–16 (5th Cir.1987); *Forbes*, 816 F.2d at 1008–09 (5th Cir.1987); *United States v. Ratcliff*, 806 F.2d 1253, 1256 (5th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987). Had the prosecutor used all of his challenges to exclude members of defendant's race, his argument might be stronger. Although the trial judge could have ruled in favor of defendant on these facts, we cannot conclude that his failure to do so was clearly erroneous.

## II. *Jury Instruction.*

■ Defendant contends that the denial of his proposed jury instruction on the voluntariness of his confession constitutes reversible error. A trial judge has "substantial latitude in tailoring his instructions," *United States v. Kimmel*, 777 F.2d 290, 293 (5th Cir.1985), and we will reverse only if he has abused his discretion under a three-part analysis that "the instruction (1) is substantively correct; (2) was not substantively covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." *United States v. Mollier*, 853 F.2d 1169, 1174 (5th Cir.1988) (quoting *United States v. Grissom*, 645 F.2d 461, 464 (5th Cir. Unit A May 1981)). Defendant's argument fails on all three points.

First, defendant's proposed charge does not appear to be substantively correct. He can identify no legal support, from this circuit or elsewhere, for his proposed ver-

sion other than unsustainable references made to the spirit of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Moreover, defendant would have the trial judge instruct that the jury must find the confession to have been voluntary beyond a reasonable doubt, when a preponderance of the evidence standard is appropriate. *Lego v. Twomey*, 404 U.S. 477, 488–89, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986).

Second, the instructions given on the voluntariness of the confession substantively covered all of defendant's legitimate concerns on this issue. In *United States v. Rodriguez*, 523 F.2d 738, 740 (5th Cir.1975) (per curiam), we held that the "trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." The instruction given here more than meets this requirement and was very similar to those which we have approved and encouraged. *See United States v. Watson*, 591 F.2d 1058, 1061 n. 2 (5th Cir.) (per curiam), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979); United States Fifth Cir. Judges Ass'n, *Pattern Jury Instructions/Criminal Cases*, at 40 (West 1983). By all indications, the instruction given covered all of defendant's legitimate substantive concerns.

Third, and finally, even if the district court did err in giving the instruction, such error clearly did not seriously impair the defendant's ability effectively to present a defense on this point. We agree with the Ninth Circuit's holding in *United States v. Casimiro–Benitez*, 533 F.2d 1121, 1124–25 (9th Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 329, 50 L.Ed.2d 295 (1976), involving a very similar fact situation, that any such error must be considered harmless beyond a reasonable doubt, given the other overwhelming evidence of defendant's guilt.

---

1. These include having the same last name as someone previously convicted by the prosecutor; age; eye contact; and body language.

*See also Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### III. *Elements of 8 U.S.C. § 1326.*

 In pertinent part, an alien is liable for a felony under 8 U.S.C. § 1326 if he (1) has been previously deported and (2) "... is at any time found in the United States, unless ... (B) ... the Attorney General has expressly consented to such alien's reapplying for admission." Defendant's indictment charges the absence of Attorney General consent as part of the offense. The jury charge omitted any reference to this language. Defendant now claims that the charge was fatally defective because of the failure to list it as a necessary element of the crime for which he was convicted.

Since defendant did not object to the charges given, we review this issue under a plain-error standard of review pursuant to Fed.R.Crim.P. 52(b). *See United States v. Hernandez–Palacios,* 838 F.2d 1346, 1350–51 (5th Cir.1988). Accordingly, we may reverse the district court only upon finding of clear error on a significant matter that operated seriously to prejudice defendant. *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1, 12–13 (1985); *Hernandez–Palacios,* 838 F.2d at 1350–51 (requiring a "fundamental miscarriage of justice"); *Wilson v. Waggener,* 837 F.2d 220, 222 (5th Cir.1988). Applying this standard to the instant facts, we find no plain error in the failure to instruct on Attorney General consent.

Moreover, it is unclear whether Attorney General consent is even an element of 8 U.S.C. § 1326 or only an affirmative defense. The "unless" language would seem to indicate that it is an exception and is therefore more in the nature of a defense which the defendant must establish.[2] The only Fifth Circuit authority indicating that

consent is an element of the crime rather than a defense appears as mere dictum. *See United States v. Campos Asencio,* 822 F.2d 506, 508 n. 1 (5th Cir.1987). However, we need not decide this issue in determining that there was no plain error. In *United States v. Oris,* 598 F.2d 428, 430 (5th Cir.), *cert. denied,* 444 U.S. 945, 100 S.Ct. 304, 62 L.Ed.2d 313 (1979), we held that the charge that a defendant was "unlawfully present" in the United States with a specific intent to disobey the law, by definition, requires a finding that there was no Attorney General consent, whether this be an element of the offense or an affirmative defense.

In *Oris* we refused to disturb a guilty verdict even though consent was a hotly-contested issue. In this case, defendant never attempted to raise the possibility that he may have had consent. Nor was there any evidence that he had applied, or considered applying, for readmission. All of the evidence, and any inferences drawn therefrom, overwhelmingly point to an absence of consent. Thus, even if the instruction was technically in error, any such error was harmless. Patently, there was no plain error that would require us to reverse the verdict.

### IV. *Constitutional Challenges to 8 U.S.C. § 1326.*

 Defendant's final claim is that 8 U.S.C. § 1326, as applied in this case, violates the Constitution for four reasons: (1) It infringes his parents' rights concerning the integrity of the family; (2) it contravenes the doctrine of *jus sanguinis;* (3) it violates the United Nations Universal Declaration of Human Rights of 1948; and (4) it imposes a penalty for something which is not a "crime" as defined in Black's Law Dictionary. The government's brief expends more than enough effort in conclu-

---

**2.** *United States v. Lazarescu,* 104 F.Supp. 771, 777–78 (D.Md.), *aff'd,* 199 F.2d 898 (4th Cir.1952); *United States v. Bakouros,* 160 F.Supp. 173, 175–76 (E.D.Pa.1958); *see United States v. Curnew,* 788 F.2d 1335, 1337 (8th Cir.), *cert. denied,* 479

U.S. 950, 107 S.Ct. 438, 93 L.Ed.2d 387 (1986) (discussing § 1326(2)(B)); *see also United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 2151 n. 2, 95 L.Ed.2d 772 (1987); *United States*

sively refuting each of these claims.[3] The constitutional challenges here are wholly without merit and completely frivolous. *See United States v. Sanchez–Mata*, 429 F.2d 1391, 1392 (9th Cir.1970) (per curiam) (discussing 8 U.S.C. § 1324) (citing *Bland v. United States*, 299 F.2d 105 (5th Cir. 1962)). If these assertions were the only bases for the appeal, we would be compelled to consider imposing sanctions on defendant's counsel. *See Coghlan v. Starkey*, 852 F.2d 806 (5th Cir.1988). The statute as applied in this case does not violate any of defendant's constitutional rights, and no good-faith argument for reversal can be made on this basis.

For the foregoing reasons, we AFFIRM the conviction.

*v. Patterson*, 446 F.2d 1358, 1359 (5th Cir.1971) (per curiam).

**3.** The government, citing appropriate authorities, points out that defendant has no standing to enforce his parents' rights even if they were violated; that *jus sanguinis*, to the extent that it is a viable doctrine, is determined according to a person's birth date, which would totally pre-vent its application here; that defendant lacks standing to enforce the United Nations Declaration, and even if he had standing; it would provide him with no right to return to a country from which he was lawfully deported; and, finally, that Black's Law Dictionary's limited definition of crime has nothing to do with the validity of a federal criminal statute.